**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5651-18T3

CLAREMONT CONSTRUCTION
GROUP, INC.,

      Plaintiff-Appellant,

v.

KEYSTONE MOUNTAIN LAKES
REGIONAL COUNCIL OF
CARPENTERS, f/k/a NORTHEAST
REGIONAL COUNCIL OF
CARPENTERS and THE NORTHEAST
CARPENTERS FUNDS,

      Defendants-Respondents.

_____

Submitted January 22, 2020 – Decided February 18, 2020

Before Judges Yannotti and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0871-19.

Hedinger & Lawless, LLC, attorneys for appellant (Robert T. Lawless, on the briefs).

Kroll Heineman Carton LLC, attorneys for respondents (Bradley Mark Parsons, of counsel and on the brief).

PER CURIAM

Plaintiff Claremont Construction Group, Inc. (Claremont) appeals from an order entered by the Law Division on August 19, 2019 compelling it to participate in binding arbitration. We affirm the order insofar as it compels binding arbitration, however, we reverse in part and remand to the trial court for entry of an amended order dismissing the complaint without prejudice.

I.

Claremont was the general contractor for a project in Jersey City. The parties entered into a Project Labor Agreement (PLA) in which they agreed that Claremont and its subcontractors would employ union workers. The PLA incorporated the terms of the Collective Bargaining Agreements (CBA) of the subcontractors and the union, defendant Keystone Mountain Lakes Regional Council of Carpenters (Keystone).[1]

The PLA further provided that the subcontractors would be required to pay certain fringe benefits to the unions for the workers. The PLA stated that if any subcontractor failed to make a required contribution, Claremont would withhold monies due to the subcontractor and pay the unions the amounts withheld.

---

[1] We refer to defendants, unions, and the funds collectively as Keystone.

A-5651-18T3

Additionally, the PLA provided a three-Step grievance procedure covering "[a]ny question, dispute or claim arising out of, or involving the interpretation or application of [the PLA] . . . ." Further, the PLA provided that all grievances "shall be resolved pursuant to the exclusive procedure" outlined therein, culminating in binding arbitration before the designated arbitrator.

Article nine of the PLA sets forth the procedure for grievances and arbitration:

> If the grievance shall have been submitted but not resolved in Step [two], any of the participating Step [two] entities may, within [twenty-one] calendar days after the initial Step [two] meeting, submit the grievance in writing (copies to other participants) to J.J. Pierson, Jr., Esq. who shall act as the Arbitrator under this procedure. The Labor Arbitration Rules of the American Arbitration Association (AAA) shall govern the conduct of the arbitration hearing, at which all Step [two] participants shall be parties. The decision of the Arbitrator shall be final and binding on the involved Contractor, Local Union and employees and the fees and expenses of such arbitrations shall be borne equally by the involved Contractor and Local Union.

The general contractor has the option to "participate in full in all proceedings at these Steps, including Step [three] arbitration." The PLA also provides that if the general contractor participates in the grievance, it "shall be part[y]" to any following Step three arbitration. (Emphasis added). The PLA states:

Should any Contractor or Subcontractor or the General Contractor become delinquent in the payment of fringe benefits as required by this agreement, it is agreed that General Contractor and/or Owner will be notified in writing by authorized representatives of the involved union via certified mail of the specific documented details of such delinquencies. Upon receipt of such certified mail notice, if the delinquency has not been paid, General Contractor and/or Owner agrees to withhold from outstanding monies due an alleged delinquent Contractor/Subcontract/General Contractor the amount claimed, or less if the amount due is less than the amount claimed by the union. The amount withheld will be paid by the General Contractor and/or Owner within fourteen . . . days after receipt of an arbitration award or order of a court of competent jurisdiction by the union, if not paid prior to said date by the delinquent Contractor/Subcontractor/General Contractor. With respect to the amounts owed by Contractors or Subcontractors pursuant to the relevant union agreements, the withholding of monies owed to Contractors as provided in this paragraph shall be the General Contractor's sole responsibility.

Sky High Management, LLC (Sky High) was one of Claremont's subcontractors. Between September 2017 and August 2018, Sky High became delinquent in its payments of fringe benefits for its workers, and Keystone notified Claremont. In response, Claremont withheld approximately $440,000 in monies due to Sky High's malfeasance and paid these monies over to Keystone.

4

In August 2018, Sky High owed an additional $180,250.53 for the workers' fringe benefits. Claremont was notified of Sky High's delinquencies on August 24, 2018 and terminated Sky High's subcontract. The August 24, 2018 notice triggered Claremont's obligation to withhold outstanding monies owed to Sky High as set forth in article eleven of the PLA. Citing a provision of the contract, Claremont asserted that no additional monies were due to Sky High. Keystone's communications with Sky High and Claremont satisfied Step one of the grievance procedure.

In December 2018, following an unsuccessful resolution of the matter, Keystone initiated a grievance proceeding with Sky High for the fringe benefits due under the contract. Claremont participated in the Step two meeting and asserted it had no obligation to pay Keystone because it had terminated Sky High's contract and Sky High was not entitled to any additional payments under the contract.

On June 11, 2019, Keystone demanded arbitration under Step three of the PLA's grievance resolution process, which prompted Claremont to file this lawsuit and to enjoin the arbitration process. After hearing oral argument on August 19, 2019, the trial court entered an order dismissing Claremont's complaint with prejudice and compelling the parties to proceed to binding

arbitration. On the record, the trial court reasoned that "the way that the contract is written, the [c]ourt [must] favor the fact that the . . . binding arbitration is really what has occurred here by use of the [S]tep two grievance procedure by Claremont in reference to this matter."

On appeal, Claremont challenges the order compelling arbitration. Claremont argues that the PLA does not obligate it to participate in binding arbitration and there is no language in the PLA supporting the trial court's conclusion. We are not persuaded by Claremont's arguments.

II.

We use a de novo standard of review when determining the enforceability of arbitration agreements. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). The validity of an arbitration agreement is a question of law, and we conduct a plenary review of such legal questions. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 446 (2014) (citing Hirsch, 215 N.J. at 186); Barr v. Bishop Rosen & Co., 442 N.J. Super. 599, 605 (App. Div. 2015) (citations omitted).

It is also well-established that this State has a strong public policy "favoring arbitration as a means of dispute resolution and requiring a liberal construction of contracts in favor of arbitration." Alamo Rent A Car, Inc. v.

Galarza, 306 N.J. Super. 384, 389 (App. Div. 1997) (citing Marchak v. Claridge

Commons, Inc., 134 N.J. 275, 281 (1993)).  However, the scope of arbitration is

governed by the agreement of the parties.  Young v. Prudential Ins. Co. of Am.,

Inc., 297 N.J. Super. 605, 617 (App. Div. 1997); Singer v. Commodities Corp.

(U.S.A.), 292 N.J. Super. 391, 402 (App. Div. 1996) (quoting Cohen v. Allstate

Ins., 231 N.J. Super. 97, 101 (App. Div. 1989)) ("[T]he scope of arbitration [is]

dependent solely upon the parties' agreement.").

Courts should review whether the arbitration clause explicitly states its

purpose "to assure that the parties know that in electing arbitration as the

exclusive remedy, they are waiving their time-honored right to sue."  Marchak,

134 N.J. at 282.  Thus, "only those issues may be arbitrated which the parties

have agreed [to arbitrate]."  Singer, 292 N.J. Super. at 403 (quoting Grover v.

Universal Underwriters Ins., 80 N.J. 221, 229 (1979)).

Here, the CBA and PLA were negotiated and agreed to by Claremont.  The

PLA provides that the general contractor may participate in all grievances and

Claremont voluntarily did so.  In addition, the PLA states that any of the entities

who participate in the Step two process qualify to submit the dispute to binding

arbitration, to be conducted in accordance with the "Labor Arbitration Rules of

the [AAA]."

Saliently, under Article nine of the PLA, Claremont's decision to participate in Step two of the process subjects Claremont to arbitration with the AAA. In our view, the trial court correctly found that once Claremont chose to participate in Step two, Claremont committed to arbitrate at Step three. In rendering its decision, the trial court placed the issue in the proper context—that arbitration has long been a favored method of dispute resolution particularly as it relates to labor disputes. Cty. Coll. of Morris Staff Ass'n v. Cty. Coll. of Morris, 100 N.J. 383 (1985).

Applying these principles, we reject Claremont's argument that since it did not initiate the Step two meeting it cannot be compelled to arbitrate. It does not matter whether Claremont or Keystone initiated that process. Since Claremont participated in the Step two meeting and Keystone properly sought arbitration of their dispute pursuant to the express terms of the PLA, the trial court correctly compelled arbitration.

We conclude that Claremont's remaining arguments—to the extent we have not addressed them—lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

While the trial court correctly ordered the parties to arbitrate their dispute, the court erred by dismissing the complaint with prejudice. Since there was no

adjudication on the merits of the complaint, the trial court improperly exercised its authority under Rule 4:37-1(b). We therefore remand to the trial court, with directions to enter an amended order, dismissing the complaint without prejudice.

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5651-18T3