778 A.2d 521 (2001)
343 N.J. Super. 241
John R. GRASSER, Jr., Plaintiff-Respondent,
v.
UNITED HEALTHCARE CORPORATION, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 2001.
Decided July 24, 2001.
*522 Joseph S. Turner (Seyfarth Shaw) of the Illinois bar, Chicago, admitted pro hac vice, argued the cause for appellant (Stradley, Ronon, Stevens & Young, Mr. Turner and J. Bryan Wood (Seyfarth Shaw) of the Illinois bar, admitted pro hac vice, attorneys; John J. Murphy, Frances X. Manning, Mr. Turner and Mr. Wood, of counsel and on the brief).
Christopher W. Hager, Woodbridge, argued the cause for respondent (Wilentz, Goldman & Spitzer, attorneys; Frank M. Ciuffani, of counsel; Mr. Hager, on the brief).
Before Judges SKILLMAN, CONLEY and LESEMANN.
The opinion of the court was delivered by LESEMANN, J.A.D.
By leave granted, defendant appeals from an order denying its motion to dismiss or remand to arbitration plaintiff's complaint alleging wrongful termination of his employment.[1] The complaint included charges of breach of contract, defamation and other common law causes of action as well as a charge of age discrimination in violation of the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. Defendant claimed that plaintiff had waived his right to file such a complaint and had agreed instead to binding arbitration of any such dispute. The claim was premised on plaintiff having signed an "Employee Handbook Acknowledgment" (the Acknowledgment) by which he agreed to be bound by arbitration procedures embodied in defendant's "Employment Arbitration Policy." That policy, in turn, was summarized and described in an Employee Handbook (the Handbook) which had been distributed to plaintiff and, presumably, other employees as well. Defendant claims that, even if the signed Acknowledgment did not express a clear and unambiguous waiver of rights to file a LAD complaint, the Handbook did contain such a statement and, by incorporation, satisfied the requirement that any such waiver by an employee be clear, specific and unambiguous. We find, however, that the reference in the Acknowledgment (the only document signed by plaintiff) did not satisfy that requirement, that defendant therefore did not meet its burden of demonstrating a knowing and binding waiver of plaintiff's right to maintain this suit, and accordingly, we affirm the decision of the trial court.
In or around 1969, when he was nineteen years old, plaintiff John R. Grasser, Jr., began working with Metropolitan Life Insurance Company (Metropolitan) in its Information Systems Department. Twenty-six years later, Metropolitan joined with Traveler's Insurance Company to form a new entity, MetraHealth. Plaintiff continued his employment with that new entity and remained an employee of MetraHealth until January 1996, when the company was purchased by defendant United Health-Care Corporation (UHC).
In January 1996, shortly after it acquired MetraHealth, defendant distributed to plaintiff (and presumably other employees as well) a "shrink-wrapped" copy of its Employee Handbook. Plaintiff acknowledges *523 receiving the Handbook but says no one ever discussed it with him or explained any of its provisions. However, on February 22, 1996, plaintiff signed the Acknowledgment referred to above which contained the following provisions:
I acknowledge that I have received a copy of the United HealthCare Corporation (UHC) Code of Conduct and the Employee Handbook. I understand that these documents contain important information on UHC's general personnel policies and on my obligations as an employee. I will remain familiar with, and agree to abide by these policies.

* * *
I understand that the provisions in this Handbook are guidelines and, except for the provisions of the Employment Arbitration Policy, do not establish a contract or any particular terms or condition of employment between myself and UHC. None of the policies constitute or are intended to constitute a promise of employment. I further understand that UHC may periodically, at its discretion, change, rescind, or add to any policies, benefits or practices with or without prior notice.

* * *
Internal Dispute Resolution/Employment Arbitration Policy (section A5). These policies provide the opportunity for prompt and objective review of employment concerns. I understand that arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. I agree to submit all employment related disputes based on a legal claim to arbitration under UHC's policy.
On March 10, 1999, defendant terminated plaintiff's employment asserting that he had violated defendant's policy on sexual harassment. Plaintiff responded by instituting this suit alleging, as noted above, a violation of LAD together with a number of common law claims related to his discharge. Defendant then moved to dismiss or stay plaintiff's suit based on what it claimed was plaintiff's agreement to submit all such disputes to arbitration. When plaintiff responded by arguing that the signed Acknowledgment was not sufficiently clear or specific to bar his claims, defendant referred to the Handbook itself. It argued that, even if the signed Acknowledgment alone was not sufficient to bar plaintiff's complaint, the Acknowledgment incorporated the relevant provisions of the Employee Handbook, those provisions were thus also binding upon plaintiff, and they are clear, specific and sufficient to bar plaintiff's suit. The Handbook provisions, as they relate to this appeal, read as follows:
Statement of Intent
UHC believes that the resolution of disagreements that arise between an individual employee and UHC or between employees in a context that involves UHC are best accomplished by internal dispute review (IDR) and, where that fails, by arbitration conducted under the rules of the American Arbitration Association. Employees and UHC benefit from the use of private arbitration because it usually results in quicker, less costly resolution of disagreements than litigation in state or federal courts. For these reasons, UHC has adopted an Employment Arbitration Policy (the "Policy").
Scope of Policy
Arbitration is the final, exclusive and required forum for the resolution of all employment related disputes which are based on a legal claim. If an employment related dispute is not resolved through the IDR process and the matter is based on a legal claim, any party to *524 the dispute may initiate the arbitration process.
A dispute is based on a legal claim and is subject to this Policy if it arises or involves a claim under any federal, state, or local statute, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment including, but not limited to, the following: Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, and all applicable amendments; state human rights or fair employment practices laws; breach of contract, promissory estoppel, or any other contract theory; and defamation, employment negligence, or any other tort theory. The arbitrator will be bound by the applicable law of the jurisdiction under which the dispute arises.
Plaintiff asks us to reject any purported waiver of an employee's right to sue for an alleged LAD violation. That approach, however, would conflict with a line of decisions extending from at least 1996, in which this court has held, first, that a clear and unambiguous waiver of the right to sue for a LAD violation, and a requirement that any such complaint be pursued exclusively through arbitration, is valid and will be enforced; and, second, that an employer's insistence on such a waiver as a condition to employment or continued employment does not constitute unlawful coercion and is not a basis for invalidating the waiver and arbitration provision. See Alamo Rent A Car, Inc. v. Galarza, 306 N.J.Super. 384, 389, 703 A.2d 961 (App. Div.1997) ("an employee may, by contract, give up his or her right to pursue a statutory LAD remedy in favor of arbitration"); Young v. Prudential Ins. Co., 297 N.J.Super. 605, 615-16, 688 A.2d 1069 (App.Div.), certif. denied, 149 N.J. 408, 694 A.2d 193 (1997) (employment contract requiring arbitration of claims against employer pursuant to requirement of National Association of Securities Dealers (NASD) held valid and inclusive of LAD and Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -8); Singer v. Commodities Corp., 292 N.J.Super. 391, 399, 678 A.2d 1165 (App.Div.1996) (also holding NASD arbitration agreement binding on employee and covering CEPA as well as defamation claims).[2]See also Garfinkel v. Morristown Obstetrics & Gynecology Assoc., 168 N.J. 124, 773 A.2d 665 (2001) (discussed further below).
However, both this court and the New Jersey Supreme Court have been equally clear in insisting that any such waiver and agreement to arbitrate must be explicit and must refer specifically to arbitration of termination disputes and claims of LAD violations. Our courts will not indulge an assumption that an employee would probably know, or should know, that vague or non-specific language is intended *525 to include termination disputes and/or LAD violations. Waiver provisions which are not clear and explicit will not be enforced. See Garfinkel v. Morristown Obstetrics & Gynecology Assoc., supra; Quigley v. KPMG Peat Marwick LLP, 330 N.J.Super. 252, 749 A.2d 405 (App.Div.), certif. denied, 165 N.J. 527, 760 A.2d 781 (2000); Alamo Rent A Car, Inc. v. Galarza, supra.
In the first of those three cases, Alamo Rent A Car, an employee signed what the court described as "Alamo's standardized employment manual known as the Family Member Pact or the `FamPact' [which] ... outlined the terms and conditions of the employment relationship and was signed by both [the employee] ... and an Alamo representative." 306 N.J.Super. at 386, 703 A.2d 961. The manual included a provision by which the employee purported to acknowledge that if she claimed "Alamo has violated this FamPact, [she] agree[d] that the dispute shall be submitted to and resolved through binding arbitration...." Id. at 387, 703 A.2d 961. Thereafter, Alamo terminated plaintiff's employment and she filed a complaint with the New Jersey Division on Civil Rights alleging that Alamo had discriminated against her and thus violated LAD. Alamo then sought to enjoin that proceeding, claiming that the above quoted provision barred plaintiff from proceeding with her administrative complaint and required that she proceed exclusively by arbitration. The trial judge rejected the argument and this court, in an opinion by Judge (now Justice) Long, affirmed.
The court acknowledged that an employee may waive his or her right to proceed in court or by administrative proceeding and agree instead to proceed only by arbitration. However, the court also held that, "An agreement to waive statutory remedies must `be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.'" Id. at 391, 703 A.2d 961 (quoting Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 140, 393 A.2d 267 (1978)). It concluded that the clause before it was
inadequate to constitute a waiver of statutory remedies. The most that can be said of it is that it mandates that if [plaintiff] claims the FamPact was violated, the dispute must go to arbitration. It does not suggest, let alone mandate, that claims arising other than out of the FamPact must also be resolved in that forum.

[Id. at 392, 703 A.2d 961.]
The court found no language in the agreement which would require the plaintiff to enforce her discrimination claim only through arbitration, and then concluded with language, quoted approvingly by the Supreme Court in Garfinkel, which bears repeating here. If an employer intends to bind an employee to arbitration under all circumstances, it must so specify and employ an inclusive arbitration clause by using such language as "any dispute":
The "any dispute" language is the very least an employer needs to utilize in order to guarantee arbitration of all disputes. The better course would be the use of language reflecting that the employee, in fact, knows that other options such as federal and state administrative remedies and judicial remedies exist; that the employee also knows that by signing the contract, those remedies are forever precluded; and that, regardless of the nature of the employee's complaint, he or she knows that it can only be resolved by arbitration.
[Id. at 394, 703 A.2d 961, quoted in Garfinkel, supra, 168 N.J. at 135, 773 A.2d 665.]
*526 The holding of Quigley is similar to that of Alamo. Quigley dealt with an employment contract reading as follows:
Any claim or controversy between the parties arising out of or relating to this Agreement or the breach thereof, or in any way related to the terms and conditions of the employment of [plaintiff] by [defendant], shall be settled by arbitration under the laws of the state in which [plaintiff's] office is located.

[Quigley, supra, 330 N.J.Super. at 257, 749 A.2d 405.]
This court found that language "ambiguous," and concluded that it should "not be construed as encompassing" plaintiff's claim of a LAD violation. Since such a waiver has the drastic effect of "depriving a citizen of access to the courts," any such provision must "clearly state its purpose":
"The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." ... Thus, to be given effect, any waiver of a statutory right "must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively."
[Id. at 271, 749 A.2d 405 (quoting from Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282, 633 A.2d 531 (1993) and Red Bank Reg'l Educ. Ass'n. supra, 78 N.J. at 140, 393 A.2d 267).][3]
In Garfinkel, decided on June 13, 2001, after the present case had been argued, the Supreme Court endorsed and approved the principles set out in Quigley and Alamo. The Court began by noting that, although "`the clear public policy of this State is to abolish discrimination in the work place,'" 168 N.J. at 130, 773 A.2d 665, the right to invoke remedies under LAD, and pursue those remedies by lawsuit or in an administrative proceeding, is subject to the "settled principle of law" that "parties to an agreement may waive statutory remedies in favor of arbitration." Id. at 131, 773 A.2d 665 (citing with approval, Quigley and Alamo). The Court went on, however, to note that notwithstanding the general principle favoring arbitration of disputes, "That favored status... is not without limits." Id. at 132, 773 A.2d 665. A purported waiver of the right to judicial enforcement of statutory rights and the substitution of an exclusive arbitration remedy, said the Court, will be enforced only if it is clear and explicit. See Ibid.
The Court then discussed, with approval, the holdings in Quigley and Alamo, and found that the clause in the agreement before it was
insufficient to constitute a waiver of plaintiff's remedies under the LAD. The clause states that "any controversy or claim" that arises from the agreement or its breach shall be settled by arbitration. That language suggests that the parties intended to arbitrate only those disputes involving a contract term, a condition of employment, or some other element of the contract itself. Moreover, the language does not mention, either expressly or by general reference, statutory claims redressable by the LAD.

[Id. at 134, 773 A.2d 665.]
It concluded by setting out a clear, unequivocal principle applicable to the case before it as well as the case before us:

*527 To reiterate, the policies that support the LAD and the rights it confers on aggrieved employees are essential to eradicating discrimination in the workplace. The Court will not assume that employees intend to waive those rights unless their agreements so provide in unambiguous terms. That said, we do not suggest that a party need refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination. It should also reflect the employee's general understanding of the type of claims included in the waiver, e.g., workplace discrimination claims.

[Id. at 134, 773 A.2d 665.]
Finally, the Court summarized its holding by saying that, "the Court must be convinced that he [the employee] actually intended to waive his statutory rights. An unambiguous writing is essential to such a determination." Id. at 136, 773 A.2d 665.
We are satisfied that the lack of specificity which barred application of the waiver provision in Garfinkel, Quigley and Alamo also characterizes the claimed waiver here. The language in the Acknowledgmentthe only document signed by plaintiffis as nonspecific as was the language in those three cases. It speaks of "employment concerns", "employment related disputes which are based on a legal claim," and a requirement for "arbitration under UHC's policy." It does not mention arbitration of LAD claims or arbitration under comparable federal anti-discrimination laws. It does not even refer specifically to claims of unlawful termination, nor does it conform with the Garfinkel requirement that such a waiver "should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." Id. at 135, 773 A.2d 665. While an attorney or a particularly sophisticated layperson may have considered whether the relatively innocuous language of the Acknowledgment might have that extensive reach, such a conclusion is neither obvious nor inevitable to an average reader without legal training or above average sophistication.
Nor is the problem cured by a generalized reference to the Employee Handbook. While the Handbook language itself, if employed in a document signed by the employee, would seem sufficiently broad, clear and specific to cover plaintiff's complaint, that language was not in the document signed by plaintiff. Thus, so far as appears, the operative language was not in front of plaintiff when he signed a document which, according to defendant, had the effect of "depriving [him] ... of access to the courts" and waived his "time-honored right to sue." See Id. at 132, 773 A.2d 665.
It is not sufficient to claim, as defendant seems to claim, that by referring back to the Employee Handbook, plaintiff could have given more specific content to the vague language that he accepted when he signed the Acknowledgment. It is not enough to say that he could have, or should have, understood the import of language which was not clear on its face. That is precisely the kind of argument that was rejected in Garfinkel, Quigley and Alamo. In all of those cases, as well as other cases dealing with an employee's waiver of his right to sue and his agreement to accept arbitration, our courts have stressed the need for clear, distinct, prominent and easy to read language, the meaning of which would be apparent to any person of average intelligence. Thus, for example, in the two cases where this court *528 dealt with arbitration language used in the securities industry, the court stressed that the waiver language was set out "in capital letters, white on a black background," warning the employee that, "THE FOLLOWING SHOULD BE READ VERY CAREFULLY BY THE APPLICANT." Young v. Prudential Ins. Co., supra, 297 N.J.Super. at 613, 688 A.2d 1069. See also Singer v. Commodities Corp., supra, 292 N.J.Super. at 396, 678 A.2d 1165, where the language employed was also set out in capital letters and specified that, "THE APPLICANT MUST READ THE FOLLOWING VERY CAREFULLY." See also Garfinkel, noting that the ultimate question is whether the employee "actually intended to waive his statutory rights" and stressing that "[a]n unambiguous writing is essential to such a determination." Garfinkel, supra, 168 N.J. at 136, 773 A.2d 665.
So here, by referring to the Acknowledgment and the Handbook, one might be able to create a rational argument that the two documents, taken together, contain the requisite elements of a contract to resolve all issues such as alleged LAD violations by arbitration only. But that is not enough. Alamo, Quigley and Garfinkel make clear that more is needed than the bare bones of what might meet the technical requirements of a "contract." The language employed must be clear, distinct and unambiguous and must clearly demonstrate a knowing waiver. As the Court said in Garfinkel, one seeking to enforce such a provision must show that the plaintiff "actually intended" such a waiver and that the writing he signed was "unambiguous" in spelling out such a waiver.
Certainly a waiver such as that which defendant asserts here is substantial. According to defendant, plaintiff has knowingly and understandably surrendered a right to submit his claim of discriminatory discharge to a court and a jury. To effect that drastic result, particularly since defendant drafted the language in question and presented it to plaintiff as a requirement for his continued employment, we see no reason why defendant should not be required to employ, in the Acknowledgment signed by its employees, language that is simple, specific, unambiguous and clear to anyone of normal intelligence and perception who is asked or required to sign it. In that regard, we note again the words of Judge Long in Alamo, where she referred to the "better course," which would be to use language clearly showing the employee's awareness that judicial and administrative remedies would normally be available to him, and spelling out his understanding that his "waiver" means he will not thereafter be able to pursue those remedies. See Alamo, supra, 306 N.J.Super. at 388, 703 A.2d 961. Indeed, it is difficult to see any reason why a clause purporting to embody a waiver of the right to sue or proceed in an administrative tribunal should not employ language such as that suggested by Judge Long, or comparable language which makes clear beyond question that the employee understands precisely what he or she is doing.
The language used here falls far short of those requirements. Thus, it will not be applied on a motion for summary judgment to deprive plaintiff of his right to enforce his LAD claim in court. Defendant has not demonstrated, at least at this stage of the proceeding, that plaintiff knowingly and voluntarily waived those rights, and defendant's alternative claim that plaintiff in fact knew of the waiver when he signed the acknowledgment, clearly cannot be resolved by summary judgment.
For the foregoing reasons, we are satisfied that the trial court correctly concluded that there exists a bona fide issue of material *529 fact as to whether plaintiff knowingly and voluntarily waived his right to institute and pursue this litigation. Thus we affirm the determination of the trial court and return the matter to that court for further proceedings. We do not retain jurisdiction.
NOTES
[1] The motion was submitted as one to dismiss plaintiff's complaint or refer it to arbitration but was converted by the trial court into one seeking summary judgment. See R. 4:6-2(e).
[2] After oral argument was held in this case, the United States Supreme Court decided Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), holding that under the Federal Arbitration Act, 9 U.S.C. §§ 1-307, an arbitration clause in an employment contract "involving commerce" is enforceable as a matter of federal law except as to certain employees directly "engaged in foreign or interstate commerce," an exclusion apparently limited to such employees as railroad or shipping workers. The prior decisions of this court cited above are consistent with Circuit City, and thus the Supreme Court's holding has no significant impact on this case. Nor would it seem to affect the principle of Quigley v. KPMG Peat Marwick, LLP, discussed below, that, "in determining whether the parties have agreed to arbitrate, state law contract principles apply."
[3] The court in Quigley noted that the waiver provision before it could hardly have been intended to cover a LAD jury trial since, at the time the clause was drafted, the LAD statute did not encompass a right to trial by jury. Quigley, supra, at 267, 749 A.2d 405. While that reasoning does not apply to the present case, the remainder of the court's analysis does apply and is persuasive.