Gailene SARBAK, Plaintiff,

v.

CITIGROUP GLOBAL MARKETS, INC., f/k/a Salomon Smith Barney, Inc., and Bhikku Pai, individually, Defendants.

Civil No. 03–CV–4043(JLL).

United States District Court, D. New Jersey.

Dec. 21, 2004.

Randall J. Peach, Esq., Alpert Butler Sanders, Norton & Bearg, P.C., West Orange, NJ, for Plaintiff.

John Michael Riordan, Esq., Bressler, Amery & Ross, Florham Park, NJ, Defendants.

## AMENDED OPINION AND ORDER[1]

LINARES, District Judge.

This matter comes before the Court on Defendants Citigroup Global Markets, Inc.

1. This Amended Opinion and Order has been filed to reflect very minor structural and grammatical changes, and in no way affects the analysis or substantive aspects of the orig-

f/k/a Salomon Smith Barney, Inc.'s and Bhikku Pai's (hereinafter collectively referred to as "Defendants") motion to compel arbitration and stay this proceeding. Plaintiff commenced this action upon allegations of discrimination based on national origin, ancestry and sex. Oral argument was heard on November 30, 2004. For the reasons set forth below, this Court concludes that Defendants' motion should be GRANTED.

## BACKGROUND FACTS

The relevant facts are not in dispute. On July 6, 1997, Plaintiff Gailene Sarbak, a female of Jamaican/West–Indian national origin and ancestry, attended an orientation for new employees of Salomon Smith Barney, Inc. (hereinafter, "Smith Barney"), prior to commencing employment. Plaintiff signed three separate documents at this orientation, including: (1) the Employment Application; (2) Salomon Smith Barney's Principles of Employment; and (3) the Employee Handbook (Employee Acknowledgment Form).

The Employment Application provides, in pertinent part, as follows:

I understand that the Company has adopted alternative dispute procedures to resolve any dispute related to my employment or termination of employment. I agree to comply with Travelers Group Dispute Resolution Procedures and Travelers Group Employment Arbitration Policy in any such dispute with the Company, its employees or agents.

(Santangelo Aff., Ex.A). The Principles of Employment, also signed July 7, provides, in relevant part:

[Y]ou agree to follow our dispute resolution/arbitration procedures for employment disputes.... These procedures include all employment disputes (including termination of employment) that you may have with Travelers Group.... Our

procedures are divided into two parts. First, an internal dispute procedure, the "Dispute Resolution Procedure," which allows you to seek review of any decision regarding your employment or termination of your employment which you think is unfair. Second, in the unusual situation when this procedure does not fully resolve an employment related dispute, you and we agree to waive any applicable statute of limitations and to submit the dispute, within one year of the date it arose, to binding arbitration, before the arbitration facilities of the New York Stock Exchange, Inc. in accordance with the arbitration rules of that body then in effect and as supplemented by Travelers Group arbitration policy.

(*Id.,* Ex.B). The Employee Handbook states, in pertinent part:

I agree that any controversy or claim arising out of or otherwise relating to my employment or termination of employment shall be resolved through binding arbitration.... The disputes to be arbitrated include ... claims, demands or actions under Title VII of the Civil Rights Act of 1964[and] any other federal state or local statute or regulation regarding employment, discrimination in employment, or the termination of employment, and the common law of any state.

(*Id.,* Ex.C). The Employee Handbook further provides:

[A]rbitration [shall be] conducted under the auspices of the National Association of Securities Dealers, Inc. ("NASD"). If, however, the NASD declines the use of its arbitration facilities, the arbitration shall then be conducted under the auspices of the American Arbitration Association ("AAA").

\* \* \* \* \* \*

inal Opinion and Order filed December 22, 2004.

The Policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based in legally protected rights (i.e., statutory, contractual or common law rights) that may arise between an employee or former employee and [Salomon Smith Barney] ... including without limitation claims, demands or actions under Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991 ... and all amendments thereto, and any other federal, state or local statute, regulation or common law, regarding employment, discrimination of employment, the terms and conditions of employment, termination of employment, breach of contract, defamation, whistle blowing or any claims arising under any Citigroup, Inc. Separation Pay Plan.

(*Id.*).

Plaintiff began her employment with Smith Barney on or about July 7, 1997. Her academic credentials qualified her as an Associate Programmer. Initially, she worked out of Defendants' offices located in New York, New York. In March of 1998, Plaintiff was transferred to the East Rutherford, New Jersey office where she worked under the supervision of Selvaraj Pichaiyan. Shortly after her transfer, Pichaiyan promoted Plaintiff to the position of Programmer Analyst, which gave her an increased salary as well as additional responsibilities.

In the summer of 1999, Plaintiff became pregnant. As a result of pregnancy complications, Plaintiff sought another position with Smith Barney in a Programmer Assistant capacity in its Global Management Reporting Systems Group. Plaintiff secured the position, and she started working in that capacity in or about September of 1999. Plaintiff alleges that during her employment under Defendant Pai's supervision, she was subjected to a hostile work environment based upon her origin, ancestry and sex, which allegedly resulted in her constructive discharge. Consequently, Plaintiff ended her employment on August 31, 2001. Plaintiff maintains that during the exit interview she questioned Human Resources representative, Casey Curcio, as to whether she could bring a legal action for her discrimination complaints. According to Plaintiff, Curcio replied "yes." (Sarbak Aff. at 6).

On or about January 20, 2002, Plaintiff filed a charge of discrimination with the New Jersey Division of Civil Rights, and thereafter with the Equal Employment Opportunity Commission ("EEOC") on or about February 1, 2002. Plaintiff received a Notice-of-Right-to-Sue from the EEOC on or about July 25, 2003. Subsequently, on August 26, 2003, Plaintiff initiated the within action. Plaintiff alleges that Defendants violated her rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and discriminated against her in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5–1 *et seq.*

Defendants presently move before this Court to compel arbitration, arguing that Plaintiff has knowingly waived her right to pursue a claim in court. Accordingly, Defendants maintain that they are entitled to an Order compelling arbitration of all of the claims set forth in Plaintiff's Amended Complaint and to stay this proceeding pending the conclusion of arbitration.[2]

---

2. By letter dated September 17, 2004, Defendants wrote to this Court to advise of a recent order entered in *Robert Hennessey v. Citigroup Global Markets, Inc. and Michael E. Price,* Docket No. L–1830–04, wherein Judge Frances L. Antonin, J.S.C., of the Law Division of the Superior Court of New Jersey, Hudson County, granted Citigroup's motion to compel arbitration based on agreements to arbitrate contained in the Citigroup/Salomon Smith

## LEGAL STANDARD

### A. Standard for Arbitration

 Defendants filed the instant petition to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* Section 4 of the FAA provides in, relevant part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. The Act dictates that any agreement to settle a dispute by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA permits a district court to compel, or enjoin, arbitration as circumstances may require. 9 U.S.C. §§ 3,4; *John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 137 (3d Cir.1998). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). These provisions evidence a "liberal federal policy favoring arbitration agreements." *Id.* at 24, 103 S.Ct. 927. In order for the FAA to apply, the district court must find that the contract with the arbitration provision "evidenc[es] a transaction involving [interstate] commerce." *Id.* (citing 9 U.S.C. § 2). This is not a rigorous inquiry; in fact, the contract "need have only the slightest nexus with interstate commerce." *Crawford v. West Jersey Health Systems (Voorhees Div.),* 847 F.Supp. 1232, 1240 (D.N.J.1994) (citations omitted).

 The Supreme Court has ruled that the FAA requires enforcement of arbitration agreements in the employment context. *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991); *see also Crawford,* 847 F.Supp. at 1242–43 (enforcing arbitration of Title VII and NJLAD claims). In *Great Western Mortgage Corp. v. Peacock,* 110 F.3d 222, 227 (3d Cir.), *cert. denied,* 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 230 (1997), the Third Circuit explained that "employees were not included within the class of those excepted from the operation of the FAA, and hence were required to arbitrate their disputes...."

 In addressing a motion to compel arbitration, a court must determine: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; and (3) whether Congress intended the asserted federal claims to be nonarbitrable. *Parker v. Hahnemann Univ. Hosp.,* 2001 WL

Barney agreements. Defendants assert that the agreements at issue there were identical to the ones at issue in the matter at bar. In that case, Judge Antonin stated that "Plaintiff willingly/knowingly agreed to submit all employee matters to arbitration." Further, that court noted, "[t]he agreement plaintiff signed included claims in this case. The language is clear and unambiguous." (Defs.' Lttr. of Sept. 17, 2004, Ex.A).

By letter of September 22, 2004, Plaintiff maintains that the arbitration clause at issue in *Hennessey* is different from the three clauses at issue here, thus making that ruling inapposite. Plaintiff further asserts that the *Hennessey* ruling is not persuasive as there is no indication of what specific challenges were made by the plaintiff in that case. Additionally, Plaintiff draws the Court's attention to the recent ruling of the New Jersey Appellate Division in *Rockel v. Cherry Hill Dodge,* 368 N.J.Super. 577, 847 A.2d 621 (2004).

797247, at *5 (D.N.J. Jan. 15, 2001) (citing *Hooters of Am., Inc. v. Phillips*, 39 F.Supp.2d 582, 609–10 (D.S.C.1998)). The parties disagree only on the first prong. Plaintiff maintains that element one is not met, arguing that the subject clauses fail to clearly and unmistakably set forth their purported purpose to deprive Plaintiff of her right to sue.

▆▆▆ The FAA centers around contract interpretation. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *Harrison v. Nissan Motor Corp. in U.S.A.*, 111 F.3d 343, 350 (3d Cir.1997) (" '[A]rbitration is [a] creature of contract, a device of the parties rather than the judicial process. If the parties have agreed to submit a dispute for a decision by a third party, they have agreed to arbitration.' ") (quoting *AMF, Inc. v. Brunswick Corp.*, 621 F.Supp. 456, 460 (S.D.N.Y.1985)); *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, AFL–CIO*, 982 F.2d 884, 888 (3d Cir.1992). State contract principles apply in ascertaining whether the parties to an action have agreed to arbitrate. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir.2002). The New Jersey Supreme Court has held that "parties to an agreement may waive statutory remedies in favor of arbitration...." *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 773 A.2d 665, 670 (2001) (citations omitted). With this legal framework in mind, the Court will now examine Defendants' motion to compel arbitration and stay the proceedings.

## LEGAL DISCUSSION

### A. Agreement to Arbitrate

▆▆▆ Defendants maintain that Plaintiff has knowingly and voluntarily waived

her right to a court hearing in favor of arbitration. In New Jersey, there is a general policy in favor of arbitration of disputes. *Garfinkel*, 773 A.2d at 670 ("[O]ur jurisprudence has recognized arbitration as a favored method for resolving disputes.") (citing *Barcon Assocs. v. Tri-County Asphalt Corp.*, 86 N.J. 179, 430 A.2d 214, 217 (1981)). Moreover, an agreement to arbitrate should be read liberally in favor of arbitration. *J. Baranello & Sons, Inc. v. City of Paterson*, 168 N.J.Super. 502, 403 A.2d 919, 921 (1979) (citing *Moreira Constr. Co. v. Township of Wayne*, 98 N.J.Super. 570, 238 A.2d 185, 188 (1968), *cert. denied*, 51 N.J. 467, 242 A.2d 15 (1968)). An agreement to arbitrate statutory employment claims is binding on the employee when he or she has knowingly waived the right to a court hearing and has clearly agreed to the terms of the agreement. *Leodori v. CIGNA Corp.*, 175 N.J. 293, 814 A.2d 1098, 1104 (2003) ("[A] waiver-of-rights provision must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim."), *cert. denied*, 540 U.S. 938, 124 S.Ct. 74, 157 L.Ed.2d 250 (2003); *Martindale v. Sandvik*, 173 N.J.76, 800 A.2d 872, 883 (2002) (arbitration agreement enforced because, among other things, it "was clear and unambiguous"); *Garfinkel*, 773 A.2d at 672 ("This Court will not assume that employees intend to waive [statutory] rights unless their agreements so provide in unambiguous terms."). Furthermore, there must be an unambiguous writing that clearly establishes that an employee intended to waive the right to sue. As the New Jersey Supreme Court has observed:

> In respect of specific contractual language, [a] clause depriving a citizen of access to the courts should clearly state its purpose. The point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are

waiving their time-honored right to sue. As we have stressed in other contexts, a party's waiver of statutory rights must be clearly and unmistakably established, and contractual language alleged to constitute a waiver will not be read expansively.

*Garfinkel,* 773 A.2d at 670 (internal quotations and citations omitted). Accordingly, the Court must be convinced that a claimant "actually intended to waive his statutory rights." *Id.* at 673. In light of the relevant facts and case law, this Court holds that Defendants have met their burden of demonstrating that an agreement to arbitrate was made.

███ In resolving whether the parties agreed to arbitrate, this Court is guided by the New Jersey Supreme Court's decision in *Leodori.* In making that determination, that court asked the following questions: (1) whether the relevant waiver-of-rights provision reflects an unambiguous intention to arbitrate a claim; and (2) if so, whether the record before the court indicates that plaintiff clearly had agreed to that provision. *Leodori,* 814 A.2d at 1104. In addressing the first question, this Court observes that Smith Barney's Employee Handbook unambiguously sets forth the drafter's intention to arbitrate all employment-related claims, including those that might be asserted under NJLAD and Title VII. This fact is clearly reflected in both the Employment Application and Employee Handbook. (Santangelo Aff., Exs.A, C). The relevant provision lists federal statutes by name as falling within its purview, as well as statutory, contractual or common law rights. (Santangelo Aff., Ex.C). The Employee Acknowledgment specifically provides as follows:

> The disputes to be arbitrated include, without limiting the generality of the forgoing, claims, demands or actions under Title VII of the Civil Rights Act of

1964, the Civil Rights Act of 1866, the Age Discrimination in Employment Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act, the Employee Retirement Income Security Act of 1974, any other federal, state or local statute or regulation regarding employment, discrimination in employment, or the termination of employment, and the common law of any state.

(Santangelo Aff., Ex.C). Furthermore, the Principles of Employment includes similar language. (Santangelo Aff., Ex.B). This language easily satisfies the requirement that such clauses provide an unmistakable conveyance of an employee's willingness to waive his or her statutory remedies. *Leodori,* 814 A.2d at 1105 (citations omitted). Moreover, there is no dispute among the parties that the scope of the agreements encompass the claims at issue in the instant matter.

Plaintiff contends that there was not a knowing and voluntary waiver of rights because Smith Barney was required to provide language indicating that the employee had other legal options, including the "time-honored right to sue," and the employee was giving up same by agreeing to the waiver. Plaintiff's argument, however, is unsupported by the law. This Court is unable to find any case law requiring that an employer include specific language indicating that arbitration would be "in lieu of" the employee's right to sue. As the *Garfinkel* court observed, "[t]he point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." 773 A.2d at 670. Here the Employee Handbook specifically provides:

> The policy makes arbitration the required and exclusive forum for the resolution of all employment disputes based on legally protected rights (i.e., statuto-

ry, contractual or common law rights).... (Santangelo Aff., Ex.C). This Court is satisfied that Plaintiff knew that, by signing the Smith Barney documents, she was waiving her "time-honored right to sue." *Garfinkel,* 773 A.2d at 670. Plaintiff was provided with adequate notice that "at the time she signed the agreement that all claims relating to employment with and termination from [employment] would be resolved through arbitration." *Rockel,* 847 A.2d at 626.[3] Furthermore, Plaintiff's reliance on *Gras v. Assocs. First Capital Corp.,* 346 N.J.Super. 42, 786 A.2d 886, 894 (2001), and *Grasser v. United Healthcare Corp.,* 343 N.J.Super. 241, 778 A.2d 521, 528 (2001), is misguided, as neither case supports the proposition that the employer must include language that arbitration would be "in lieu of" the employee's right to sue.

 A further alleged deficiency is that the arbitration clauses are unenforceable due to the fact that they fail to contain sufficiently large, or otherwise conspicuous language that would have alerted her to the significance of the document she was instructed to sign. This argument also fails. While the size of the print and the location of the arbitration provision has been held to be relevant to the determination regarding compelling arbitration, *Rockel,* 847 A.2d at 627, here, it cannot be said that the arbitration clause was hidden or otherwise inconspicuous. As Defendants explain, the arbitration clauses at issue were prominently displayed, as they were located two inches above Plaintiff's signature. (Santangelo Aff., Ex.C). Further, a review of the Employee Acknowl-

edgment reveals that no other text appeared between Plaintiff's signature and the arbitration clause. Moreover, it is important to note that in *Hennessey,* Judge Antonin found similarly presented arbitration clauses to be sufficient to compel arbitration, noting that the language was "clear and unambiguous," and, as such, the plaintiff "willingly/knowingly agreed to submit all employees matters to arbitration." (Defs.' Lttr. of Sept. 17, 2004, Ex. A).

 An additional reason advanced by Plaintiff for refusing to enforce the arbitration provision is that the documents purporting to require arbitration in the instant matter are so ambiguous and confusing that it cannot be said "to effectuate a knowing and voluntary waiver of rights." *Garfinkel,* 773 A.2d at 672. It is well-settled that arbitration clauses must refrain from any ambiguous language because in order to have knowingly waived her right to sue, the content of the agreement must clearly state its purpose. *Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ.,* 78 N.J. 122, 393 A.2d 267, 276 (1978). Moreover, for the clauses to be given effect, any such waiver of statutory rights "must be clearly and unmistakably established, and that express language will not be read expansively." *United Steelworkers v. Nat'l Labor Relations Bd.,* 536 F.2d 550, 555 (3d Cir.1976) (citing *Radio Television Technical School, Inc. v. NLRB,* 488 F.2d 457 (3d Cir.1973); *Texaco, Inc. v. NLRB,* 462 F.2d 812 (3d Cir.), *cert. denied.,* 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 302 (1972)). Initially, it should be noted that Plaintiff's affidavit fails to raise the issue of confusion or

---

**3.** In Plaintiff's letter of September 22, 2004, it is asserted that the New Jersey Appellate Division's recent decision in *Rockel,* should guide the Court's disposition. That case is distinguishable from the matter at bar, as here there are no conflicting arbitration provi-

sions. Furthermore, there is a clear waiver of statutory rights in the instant matter. Moreover, the language at issue provided Plaintiff with sufficient notice that all claims relating to employment would be resolved through arbitration.

ambiguity as to the contractual language. Moreover, as Defendants correctly observe, it was incumbent upon Plaintiff to read and understand the dispute resolution procedures presented in the Smith Barney documents. The Principles of Employment specifically state, in pertinent part:

[I]t is your responsibility to read and understand the dispute resolution/arbitration procedures. If you have any questions now or in the future, please ask.

(Santangelo Aff., Ex.B). Likewise, the Employee Handbook provides:

If I have any questions about the Handbook ... or any policies of Travelers Group or Smith Barney I will take responsibility for having them answered.

(*Id.,* Ex.C).

It cannot be said that the procedures set forth in the subject clauses were ambiguous or confusing. The Employment Application Authorization and Acknowledgment contain the following language:

I understand that the Company has adopted alternative dispute resolution procedures to resolve any dispute related to my employment or termination of employment. I agree to comply with Travelers Group Dispute Resolution Procedures and Travelers Group Arbitration Policy.

(Santangelo Aff., Ex.A). The Court finds that there was clear and unequivocal language that arbitration was Plaintiff's sole remedy in the event of a dispute. Further, the language contained in the Employment Application and Principles of Employment concerning arbitration was sufficiently consistent with the language in the Employee Handbook. Similarly, the Principles of Employment state:

[Y]ou agree to follow our dispute resolution/arbitration procedures for employment disputes.

(*Id.,* Ex.B).

Additionally, Plaintiff contends that Smith Barney did not commence either the first or second phase of the two-part process for resolving employment-related disputes. The Principles of Employment provides as follows:

Our procedures are divided into two parts. First, an internal dispute procedure, the "Dispute Resolution Procedure," which allows you to seek review of any decision regarding your employment or termination of your employment which you think is unfair. Second, in the unusual situation when this procedure does not fully resolve an employment related dispute, you and we agree to waive any applicable statute of limitations and to submit the dispute, within one year of the date it arose, to binding arbitration, before the arbitration facilities of the New York Stock Exchange, Inc. in accordance with the arbitration rules of that body then in effect and as supplemented by Travelers Group arbitration policy.

(Santangelo Aff., Ex.B). This Court notes that this provision cannot reasonably be said to be confusing, as Plaintiff argues. The provision is clear on its face. If the Smith Barney internal dispute procedure is unsuccessful, the parties can submit the dispute to the N.Y.S.E. arbitration facilities. Indeed, it appears that the employee is responsible to commence the first phase. There is no indication, however, that Plaintiff sought review of any employment decision under the first phase of the Smith Barney procedures.

Since the first question under *Leodori* is answered in the affirmative, the next step is to determine if the record before the Court indicates that Plaintiff

clearly agreed to the waiver-of-rights provisions. *Leodori,* 814 A.2d at 1104. A valid waiver "results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent." *Id.* at 1105. The Court will not assume that employees intend to waive those rights unless their agreements provide as such in unambiguous terms. As the New Jersey Supreme Court has noted, "a party need [not] refer specifically to the LAD or list every imaginable statute by name to effectuate a knowing and voluntary waiver of rights. To pass muster, however, a waiver-of-rights provision should at least provide that the employee agrees to arbitrate all statutory claims arising out of the employment relationship or its termination." *Garfinkel,* 773 A.2d at 672. Therefore, in order to enforce a waiver-of-rights provision in this setting, the Court "requires some concrete manifestation of the employee's intent as reflected in the text of the agreement itself." *Id.*

■■■ Here, Plaintiff signed three distinct documents each containing arbitration provisions. Her actions constitute a concrete manifestation of her assent. Plaintiff mistakenly relies on *Grasser,* 778 A.2d at 528, asserting that she could not have knowingly agreed to waive her right to sue because the arbitration clauses lacked conspicuous language. *Grasser* is easily distinguishable from the case at bar because there, the Appellate Division found that the claimed waiver lacked the necessary specificity. *Id.* at 527. By contrast, the waiver before this Court included a much more specific and detailed arbitration provision.

Plaintiff also improperly relies on *Gras,* where the court held that "[a]lthough plaintiff contended that defendant never alerted him to the arbitration provision, no such obligation exists where the provision is not hidden." 786 A.2d at 894. Here, Plaintiff's argument concerning the visibility of the clauses fails because these clauses are not hidden, but rather, prominently located. Moreover, Plaintiff signed a one-page, three paragraph Employee Acknowledgment form that accompanied the Employee Handbook, which contained arbitration clauses in the first and third paragraphs slightly above Plaintiff's signature. Accordingly, the waiver-of-rights provision before the Court properly reflects that Plaintiff clearly and unambiguously agreed to arbitrate the disputed claim.

■■■ Additionally, this Court notes that " '[f]ailing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading.' " *Gras,* 786 A.2d at 894 (quoting *Berman v. Gurwicz,* 178 N.J.Super. 611, 429 A.2d 1084, 1087 (1981)). Absent a showing of fraud or mental incompetence, "a person who signs a contract cannot avoid his obligations under it by showing that he did not read what he signed." *Comprehensive Accounting Corp. v. Rudell,* 760 F.2d 138, 140 (7th Cir.1985); *Donovan v. Mercer,* 747 F.2d 304, 308 n. 4 (5th Cir.1984). Here, Plaintiff possessed an academic background in mathematics and computer programming and is certainly more than capable of understanding the content of the arbitration provisions. In *Gilmer,* for example, the plaintiff had agreed to resolve all disputes, including those of an employment nature, through arbitration proceedings. The plaintiff sought to bring suit claiming a violation of the Age Discrimination in Employment Act of 1967 in the district court, despite a written agreement to the contrary. The Court determined that the plaintiff, an educated businessman, remained subject to ordinary contract principles, as he could not show fraud or mental incompetence. *Gilmer,* 500 U.S. at 33, 111 S.Ct. 1647. In view of all the foregoing,

this Court concludes that there was a knowing and voluntary waiver by Plaintiff of her statutory rights, as she agreed clearly and unambiguously to arbitrate the disputed claims.

## B. Waiver

█ Plaintiff maintains that, assuming *arguendo* this Court finds there was an agreement to arbitrate, Defendants have nonetheless waived their right to arbitration through their statements and conduct toward Plaintiff. A party may waive or revoke their agreement to arbitrate either expressly or through their conduct. *State, Office of Employee Rel. v. Communications Workers of Am., AFLCIO*, 154 N.J. 98, 711 A.2d 300, 306 (1998) (citing *McKeeby v. Arthur*, 7 N.J. 174, 81 A.2d 1, 4 (1951) ("[W]here the parties expressly or by implication waive or revoke the agreement to arbitrate, or are in default in proceeding with the arbitration, the right to a suit at law revives....")). As Plaintiff observes, the Principles of Employment provides that the arbitration process must be set forth within one year of the date the dispute arose. Plaintiff argues that Defendants waived any right to arbitration because, even though they knew of Plaintiff's discrimination claim no later than August 2001, the date of her exit interview, they sought to compel arbitration by motion filed February 17, 2004.

█ Plaintiff's argument for waiver, however, is untenable. In federal courts, waiver under the FAA is not to be lightly inferred. *PaineWebber, Inc. v. Faragalli*, 61 F.3d 1063, 1068 (3d Cir.1995) (citations omitted). A party waives its right to compel arbitration only in the following cir-

cumstances: "when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown." *Peacock*, 110 F.3d at 233. The last of these factors is the key to the analysis. As the Third Circuit has observed, " '[p]rejudice is the touchstone for determining whether the right to arbitration has been waived.' " *PaineWebber*, 61 F.3d 1063, 1069 (3d Cir. 1995) (quoting *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 925 (3d Cir.1992)).[4]

█ Two factors inform this Court's decision on the issue. First, litigation in this case is limited to Plaintiff's Amended Complaint, Defendants' Answer, and the parties' submissions with respect to the instant motion. The parties have not exchanged Rule 26 disclosures, nor have they drafted a discovery plan, or participated in a Scheduling Conference with the Court. Moreover, Plaintiff's Right–to–Sue letter, obtained through the EEOC's investigation of her charge, does not constitute litigation on the merits for waiver purpose. *Gilmer*, 500 U.S. at 28, 111 S.Ct. 1647 (noting that EEOC investigation of charge and enforcement of Title VII do not defeat arbitration agreement). *See also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 291, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Second, and more importantly, Plaintiff has failed to put forth any evidence to demonstrate prejudice from the delay. Considering Plaintiff's burden to demonstrate waiver, this Court is satisfied that Defendants preserved their right to refer Plaintiff's claim to arbitration.

---

4. Also relevant to the waiver inquiry is "not only the timeliness or lack thereof of a motion to arbitrate but also the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims, ... whether the party has informed its adversary of the intention to seek arbitration even if it has not filed a motion to stay the district court proceedings, ... the extent of its non-merits motion practice, ... and the extent to which both parties have engaged in discovery." *Hoxworth*, 980 F.2d at 926–27 (internal citations omitted).

Plaintiff further contends that during the exit interview she expressed her complaints of discrimination to Human Resources representative Casey Curcio. According to Plaintiff, Curcio responded that Plaintiff could "take legal action." (Sarbak Aff. at 6). This basis for waiver also fails, as it is clear that Plaintiff did take a form of legal action in filing charges with the New Jersey Division of Civil Rights and the EEOC. Moreover, it is conceivable that in the context of that discussion, Curio contemplated arbitration as legal action. Therefore, it does not appear to this Court that Curcio's alleged statement was incorrect. Nonetheless, for all of the reasons mentioned above, Defendants have not waived their right to arbitration.

## C. Stay

■■■■ Defendants maintain that the proceedings must be stayed pending arbitration pursuant to the FAA. The FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .

9 U.S.C. § 3. "If the issues in the case are within the contemplation of the arbitration agreement, the FAA's stay-of-litigation provision is mandatory, and there is no discretion vested in the district court to deny the stay." *U.S. v. Bankers Ins. Co.,* 245 F.3d 315, 319 (4th Cir.2001) (citing *In re Complaint of Hornbeck Offshore Corp.,* 981 F.2d 752, 754 (5th Cir.1993)); *see also Hooters of America, Inc. v. Phillips,* 173 F.3d 933, 937 (4th Cir.1999) ("When a valid

agreement to arbitrate exists between the parties and covers the matter in dispute, the FAA commands the federal courts to stay any ongoing judicial proceedings, 9 U.S.C. § 3, and to compel arbitration, *id.* § 4."). As this Court has already determined that Plaintiff's claims are arbitrable, the FAA mandates that the Court stay this proceeding and compel Plaintiff's claims to an arbitrable forum.

## CONCLUSION

For the foregoing reasons, it is on this 21st day of December, 2004, hereby

**ORDERED** that Defendants' motion to compel arbitration and stay the proceeding is GRANTED.