# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2273-22
A-0145-23

P.H.,

    Plaintiff-Appellant,

v.

J.H.,

    Defendant-Respondent.

J.H.,

    Plaintiff-Respondent,

v.

P.A.H.,

    Defendant-Appellant.

        Argued May 6, 2025 – Decided July 10, 2025

        Before Judges Smith and Chase.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket Nos. FV-18-0641-23 and FV-18-0563-23.

Thomas D. Baldwin argued the cause for appellant (Chiesa Shahinian & Giantomasi, PC, attorneys; Thomas D. Baldwin and Samantha M. Weckenman on the briefs).

Mark H. Sobel argued the cause for respondent (Greenbaum, Rowe, Smith & Davis, LLP, attorneys; Mark H. Sobel, of counsel and on the brief; Lisa B. DiPasqua, on the brief).

PER CURIAM

These back-to-back appeals arise out of a domestic violence trial between P.H.[1] and J.H.  J.H. secured a temporary restraining order (TRO) against P.H. and pursued a final restraining order (FRO) under the New Jersey Prevention of Domestic Violence Act (PDVA)[2] against him.  Before trial could commence, P.H. unsuccessfully sought a TRO against J.H., which was rejected by a domestic violence hearing officer (DVHO).  The trial court denied P.H. the opportunity to amend or refile his TRO complaint, determining that P.H. had waived his right to do so before the DVHO.  The ensuing trial took fifteen days, with the sole issue being whether an FRO should be issued against P.H.  After the trial's conclusion, the court made findings and granted an FRO against P.H.

---

[1]  We use initials to protect the parties' privacy and the confidentiality of these proceedings in accordance with Rule 1:38-3(d)(10).

[2]  N.J.S.A. 2C:25-17 to -35.

Compensatory damages pursuant to the PDVA were ordered in a separate hearing by a second judge, because the judge presiding over the trial had retired.

P.H. appeals, contending, among other things, that the trial court erred by making unsupported Silver[3] prong one and prong two findings in J.H.'s complaint against him, resulting in the issuance of an FRO. He also contends the trial court erred when it denied him the opportunity to amend or refile his TRO complaint against her.

We affirm the court's orders granting the FRO and compensatory damages against P.H. We reverse the order denying P.H. the opportunity to amend his TRO complaint or refile it. On that issue, we remand for further proceedings consistent with this opinion.

I.

We obtain the facts from the extensive record, including the fifteen-day FRO trial. J.H. and P.H. were married on April 8, 2010. Prior to their marriage, the parties executed a prenuptial agreement protecting their separate premarital property interests. They have two children, now eleven and thirteen years old.

---

[3] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

A-2273-22

In July 2022, J.H. filed for divorce. She alleged that "[f]or years, my husband has been controlling, critical, condescending, belittling and, at times, aggressive." She further alleged that P.H. never permitted her to have a key to their current home or the ones they previously lived in. According to J.H., P.H. had sole access to their home's front door security camera, the security system outside the home, and the home Wi-Fi remote activation system.

On December 17, 2022, J.H. alleged that P.H. threw a couch pillow at her while she and the children were watching a movie. She took out her phone to record P.H.'s behavior, and P.H. grabbed her arm, attempting to get the phone away from her. On the video in evidence from J.H.'s phone, she states, "[s]top—stop, [P.H]. I'm asking you to leave me alone. Please leave me alone . . . stop it. Don't—let go of my arm." The same video reveals that a pillow is visible on the floor. The record also includes another video taken by J.H., where one of the children asks if they should call 9-1-1. In a phone call, J.H. asked her friend, R.D., to come to her home. She told R.D. that P.H. was drunk, "scaring the kids," and following her to try and take her phone. She also told R.D. that she wanted to take the children to her mother's home, and that she was afraid of what P.H. might do to her if she was alone.

When R.D. arrived, J.H. spoke with her by the front door, inside the home, with the children present. J.H. went upstairs to pack a bag. P.H. asked R.D. to leave and, when she refused, he grabbed her to remove her from the home. J.H. came to the top of the stairs and began yelling at P.H. to let R.D. go. A video taken by J.H. shows P.H. telling R.D. to leave, grabbing her arm and dragging her to the front door. P.H. eventually removed R.D. from the home, and each of them called the police. J.H. and the children went into a bathroom, locked the door, and she called the police. J.H. testified that the children were "terrified" and that she was "scared that he was going to hurt me." When police arrived, J.H. told them P.H. grabbed her by the arm, but she also told them she did not need any medical attention.

J.H. alleged past acts of domestic violence. They included: (1) a 2011 confrontation where she alleged P.H. came home drunk and followed her around their home, ripping a landline phone out of the wall when she threatened to call the police; (2) a 2013 incident where J.H. learned that P.H. had installed concealed surveillance cameras in their shared bedroom; (3) a 2016 confrontation where P.H. confronted her angrily and physically threw her into a wall while she was looking at papers on his desk; and (4) a 2022 incident where P.H. chased down a delivery driver, stopping the driver at a traffic light and

asking for the driver's identity.  She secured an amended TRO on December 23, 2022.

On January 17, 2023, P.H. sought a TRO against J.H. and appeared before a DVHO.  The DVHO declined to recommend granting the TRO and advised P.H. that "you can appeal my decision.  You'll go before one of our Superior Court judges."  The officer advised P.H. that, on appeal, the Superior Court judge would "apply the same case law I applied."  The record of P.H.'s colloquy with the DVHO shows that he declined to file an appeal at that moment, stating that he "[did] not want to waste the court's time."

On the first day of trial, February 2, 2023, counsel appeared before the trial court and recounted his pre-trial efforts to clarify P.H.'s right to appeal the DVHO's decision.  Counsel stated:

> [m]y client left . . . court around 5:20[p.m] . . . January 17th.  I appeared on January 18th and communicated with domestic violence intake officers.  The first officer with whom I spoke indicated to me that we had a unique circumstance in that my client was going to be permitted to proceed with his appeal.

The trial court replied:

> I spoke with [the TRO appeal court], because [it] was referenced within court papers, that the issue had been brought to [the court's] attention, and . . . [it] had determined that . . . notification of appeal had been adequately given to [P.H.], and [P.H.] had decided not

6

to take the appeal . . . . [The court] . . . decided that an appeal, therefore, should not occur after the initial decision of your client not to appeal. And I know you have argued already up to this point in time that that's not a complete or fair or an accurate characterization [of] your client's decision making. But [the TRO appeal court] determined that your client should not, after the date of January 18th, be permitted to take [an] appeal after he had already [decided] on the 17th not to appeal . . . .

The trial court heard P.H.'s request through counsel for leave to appeal the denied TRO or file an amended TRO complaint. On February 15, 2023, the trial court denied the alternative requests. P.H. appealed on April 1, 2023, during J.H.'s FRO trial.

J.H.'s FRO trial took place over fifteen days, between January 19 and May 10, 2023. Six witnesses testified, including: J.H., P.H.; Officer Patrick Minardi; R.S.; L.P.; and C.M.

After the trial, the court issued an FRO against P.H., making findings. On May 11, in a comprehensive oral statement of reasons, the court first made credibility findings. It found J.H. to be "highly, highly credible," further finding that her testimony on cross-examination only reinforced her credibility. The court found P.H. "marginally credible," and it also found Officer Minardi to not

be credible.  As to <u>Silver</u> prong one,[4] the court found that P.H.'s attempt to force his way into the locked bathroom where J.H. and the kids were hiding constituted the predicate act of harassment.[5]  The court cited P.H.'s prior acts of domestic violence against J.H. over the years, and the impact of ongoing domestic violence on the children to support its <u>Silver</u> prong two[6] findings.

It stated:

> I find by a preponderance of the credible, reliable, material, competent and relevant evidence that the defendant committed several acts of harassment on December 17, 10 2023.  I find -- including the physical pushing, touching, subsection (b).
>
> . . . .
>
> And I find that the domestic violence history that I've laid out here in the record and as testified to by the plaintiff, I believe her, and I find all those acts were committed, and they relate back to and characterize the controlling relationship of [P.H.] financially, emotionally, and, therefore, under prong two of [<u>Silver</u>] the plaintiff needs to have a final restraining order to prevent future harassment, including, but not limited to, preventing future annoyance and alarm being perpetrated by [P.H.]  And, for the record, the proofs are overwhelming.  Clear and convincing evidence

---

[4]  <u>Silver</u>, 387 N.J. Super. at 125.

[5]  The court expressly stated that it made no finding as to the alleged predicate act of assault in J.H.'s complaint.

[6]  <u>Id.</u> at 126.

could have been proven in this case easily, but I only need to reach preponderance of the evidence. But that's how strongly the [c]ourt sees testimonial, documentary and video/audio proofs adduced over [the course of the trial].

The court next ordered P.H. to pay attorney fees and compensatory damages, directing J.H.'s counsel to submit a certification of services. The following day, May 12, 2023, the trial court judge retired.

Counsel for J.H. submitted a certification seeking $262,151 in fees and $443.45 in costs for a total of $262,594.45. A second trial judge awarded the requested total on September 7, 2023, in an amended FRO.

On September 15, 2023, P.H. appealed the amended FRO. P.H. moved to stay the enforcement of compensatory damages pending appeal, and J.H. cross-moved, seeking the enforcement of the order. In an amended FRO dated January 22, 2024, the second judge ordered P.H. to pay $139,662.01 within ten days.

In these back-to-back appeals, P.H. makes the following claims.

In A-2273-22, P.H.'s primary argument is that the trial court erred when it denied his request to file an amended TRO or a new complaint after his initial complaint was rejected by the DVHO.

In A-0145-23, P.H. claims that the trial court erred: by finding that P.H. had the requisite intent to harass L.H.; failing to perform a proper Silver

9

analysis; by finding that the preponderance of the credible evidence supported issuance of an FRO; and by showing bias towards P.H. P.H. also alleges the second judge abused their discretion in awarding compensatory damages equivalent to counsel fees.

II.

Our limited scope of review in domestic violence cases is well established. "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). Our Supreme Court has expressed its confidence that the family courts "can successfully balance the interests of society in deterring the issues of domestic violence and caring for families." Brennan v. Orban, 145 N.J. 282, 305 (1996).

Deference is particularly warranted where, as here, "'the evidence is largely testimonial and involves questions of credibility.'" Cesare v. Cesare, 154 N.J. 394, 412 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Such findings become binding on appeal because it is the trial judge who "'sees and observes the witnesses,'" thereby possessing "a better

perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).  It follows that we will not disturb a trial court's factual findings unless convinced "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice."  Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974) (quoting Fagliarone v. Twp. of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963)) (internal quotation marks omitted).

Consequently, "findings by a trial court are binding on appeal when supported by adequate, substantial, credible evidence."  Gnall v. Gnall, 222 N.J. 414, 428 (2015).  We do not, however, accord such deference to the court's legal conclusions, which are reviewed de novo.  Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016).

We consider each appeal in turn.

III.

A-2273-22

P.H.'s most salient arguments in this appeal are that the trial court: improperly denied his appeal of the DVHO's adverse determination on his TRO application, concluding that P.H. waived his appeal; and the trial court

11

improperly denied P.H. the opportunity to amend his TRO complaint or file a new complaint.

A.

Applications for a TRO are heard either by a DVHO or a judge. R. 5:7A(c). DVHOs are "appointed by the Judiciary to handle and make recommendations in matters" under the PDVA. R. 5:25-4 (2004) (repealed 2025). The DVHO hearing a case must review related case files involving the parties before making a referral to a designated judge. Admin. Off. of the Cts., Admin. Directive #14-18, Domestic Violence Hearing Officer Program Standards, at 4 (September 4, 2018) [hereinafter Directive #14-18]. Importantly, the DVHO does not grant or deny a TRO; instead, the DVHO "can make referrals to the designated judge as necessary and appropriate." Ibid. A Superior Court judge must review the recommendation and is free to accept or reject the DVHO's recommendation. Id. at 5-6.

After the DVHO told P.H. she could not recommend issuance of a TRO because she did not believe harassment had occurred, she stated "you can appeal my decision. You'll go before one of our Superior Court judges." The next day the trial court found that P.H.'s statement, "I do not want to waste the Court's time," was waiver of his right to appeal.

Questions of waiver are typically questions of intent, and it follows that they involve factual determinations. Shebar v. Sanyo Bus. Sys. Corp., 111 N.J. 276, 291 (1988). "Even within the setting of a civil controversy, it must affirmatively appear that the party charged with waiver knew his rights and deliberately intended to relinquish them." State v. Morgenstein, 147 N.J. Super. 234, 238 (App. Div. 1977) (first citing W. Jersey Title & Guar., Co. v. Indus. Tr. Co., 27 N.J. 144, 153 (1958); and then citing Allstate v. Howard Sav. Inst., 127 N.J. Super. 479, 487-89 (Ch. Div. 1974)). The waiver of a statutory right "must be clearly and unmistakably established . . . ." Grasser v. United HealthCare Corp., 343 N.J. Super. 241, 249 (App. Div. 2001) (quoting Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 257 (App. Div. 2000)) (internal quotation marks omitted).

DVHOs can conduct a TRO hearing, but they may only recommend granting or denying a TRO application and forward that recommendation "for review and (possible) signature by a judge." Directive #14-18 at 2. Whether a TRO application is heard by a DVHO or the Municipal Court, if the applicant requests an immediate de novo review of the denial of a TRO, an on-call Superior Court judge must be called. Admin. Off. of the Cts., Admin. Directive #13-19, Municipal/Family—Immediate De Novo Hearing for the Municipal

Court Denial of a Domestic Violence Temporary Restraining Order, at 1 (July 10, 2019) [hereinafter Directive #13-19]. The New Jersey Domestic Violence Manual advises that if a DVHO does not recommend granting a TRO, the "DVHO must advise the applicant of their right to see a judge for a hearing de novo, in accordance with DVHO Standards." Sup. Ct. & Off. of the Att'y Gen., Domestic Violence Procedures Manual, at 46 (rev. April 22, 2022) [hereinafter the DV Manual].

"Due process is a fundamental right accorded to both parties under the PDVA." T.M.S. v. W.C.P., 450 N.J. Super. 499, 505 (App. Div. 2017). Thus, a party must receive "notice defining the issues and an adequate opportunity to prepare and respond." Ibid. (quoting J.D., 207 N.J. at 478). The denial of a TRO and dismissal of a complaint "shall not bar a victim from refiling a complaint in the Family Part based on the same incident and receiving an emergency, ex parte hearing de novo not on the record before a Family Part judge, and every denial of relief by a municipal judge shall so state." N.J.S.A. 2C:25-28(h)(2)(i).

After receiving word from the DVHO that his TRO was being rejected, P.H.'s statement that he "didn't want to waste the court's time" can lead to different inferences. A finder of fact could infer that P.H.'s statement was a

waiver of his right to appeal, or merely a statement of disappointment. The hearing started at 5:19 p.m. Yet another inference which could be drawn is that P.H. did not want to disturb the court after routine business hours. We cannot conclude the statement is the "clearly and unmistakably established" relinquishment of the right to appeal required by Grasser, 343 N.J. Super. at 249.

Any decision regarding a TRO "is immediately appealable," N.J.S.A. 2C:25:28(h)(2)(i). A plain reading of the statute does not lead us to conclude that a party must decide to appeal immediately after a decision is rendered. Rather, a Superior Court judge must be available for such hearings because the "safety of a domestic violence victim is always of utmost concern, and during a weekend or holiday, a victim may wait two to three days for a de novo hearing." Directive #13-19 at 1. Under Rule 2:4-1, an appeal may be filed within forty-five days of the entry of the order. The day after the entry of the order is well within that time limit.

Even though P.H. had the benefit of counsel's advice prior to filing the complaint, he did not have the benefit of counsel at the hearing. Whether P.H.'s statement was made due to unfamiliarity with the appeal process, frustration at the result, or a belief that the process would "waste the court's time," we cannot conclude that he unmistakably waived his right to appeal the decision.

A-2273-22

We conclude the trial court's determination that P.H. had somehow waived his right to file his own claim under the PVDA was error.

B.

P.H. next contends that he should have been allowed to amend his application for a TRO based on the predicate acts of harassment and criminal mischief, an allegation which was not included in the original complaint. The trial court declined to permit P.H. to amend his TRO complaint because, in its view, an amendment would start a cycle of retaliatory amendments between P.H. and J.H., causing delay.

"A motion for leave to amend pleadings is liberally granted, especially in matters affecting the public interest and even when the merits of the claim are uncertain." N.J. Div. of Youth & Fam. Servs. v. M.W., 398 N.J. Super. 266, 288 (App. Div. 2008) (citing Notte v. Merchant's Mut. Ins. Co., 185 N.J. 490, 500-01 (2006)). Even so, decisions on motions to amend pleadings "are best left to the sound discretion of the trial court in light of the factual situation existing at the time each motion is made." Fischer v. Yates, 270 N.J. Super. 458, 467 (App. Div. 1994).

The DV Manual states that a complaint may be amended for various reasons, including adding or correcting information about the incident that led

to the complaint or about a prior history of domestic violence. DV Manual, at 50. A complaint may be amended even at the FRO hearing; if "it becomes evident . . . that the plaintiff is seeking a restraining order based upon acts outside the complaint, the court, either on its own motion or on a party's motion, shall amend the complaint to include those acts." Id. at 56. A complainant may also refile a complaint "based on the same incident" as the previously denied complaint. N.J.S.A. 2C:25-28(i). This broad and expansive approach toward the amending TRO complaints is consistent with the Legislature's intent in enacting the PDVA "to assure the victims of domestic violence the maximum protection from abuse the law can provide." N.J.S.A. 2C:25-18.

When we consider the statute and the policy manual, we conclude P.H. should have been permitted to either amend his TRO complaint or re-file his complaint based on the same predicate act and include additional allegations. Denial by the trial court thwarted the clear intent of the Legislature to provide victims of domestic violence with the maximum protection, including the ability to add or amend information that could lead to a TRO.

We find the trial court mistakenly exercised its discretion when it denied P.H.'s application to amend his TRO or file a new complaint at the commencement of J.H.'s FRO trial.

A.

In challenging the trial court's issuance of the FRO, P.H. asserts that the trial court committed error by: finding the predicate act of harassment as defined by N.J.S.A. 2C:33-4; failing to make sufficient Silver findings; and granting the FRO against the weight of the evidence. We are unpersuaded.

In J.D. v. A.M.W., 475 N.J. Super. 306, 313-14 (App. Div. 2023), we recited our well-settled analytic framework for domestic violence complaints:

> In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver, 387 N.J. Super. at 125. The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a). If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 127). The factors which the court should consider include, but are not limited to:
>
> > (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
> >
> > (2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

[(Alterations in original) (citations reformatted).]

After fifteen days of trial, in which P.H. and J.H. testified extensively, the trial court found by a preponderance of the sufficient credible evidence in the record that P.H. committed the predicate act of harassment. The court also considered J.H.'s credible testimony regarding the prior incidents in 2011, 2013, 2016, and 2022, occurred, and determined that there was a history of domestic violence. Applying our deferential standard of review, we easily affirm the trial court's order dated May 11, 2023, issuing final restraints against P.H. for the reasons stated in the cogent oral opinion of the trial court. We add the following comment concerning the predicate act found by the court.

We reject P.H.'s claim on appeal that his conduct did not rise to harassment under N.J.S.A. 2C:33-4.

A person is guilty of the crime and predicate act of harassment if he acts "with purpose to harass another" and:

> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

The purposeful intent necessary to constitute harassment "may be inferred from the evidence presented." State v. Hoffman, 149 N.J. 564, 577 (1997) (citing State v. McDougald, 120 N.J. 523, 566-67 (1990)). "Common sense and experience may inform that determination." Ibid. (citing State v. Richards, 155 N.J. Super. 106, 118 (App. Div. 1978)). However, it is not enough for an actor merely to know he is likely to cause alarm or annoyance; he must "demonstrate[] a 'conscious' objective to do so." State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989). "The victim's subjective reaction alone will not suffice; there must be evidence of the improper purpose." J.D., 207 N.J. at 487.

Domestic violence matters, especially when parties are going through a divorce or children are involved, "often present circumstances in which a party may mask an intent to harass with what could otherwise be an innocent act. But some domestic violence complainants may perceive an entirely innocent act to be a harassing one as well." Id. at 487-88. This is why courts are cautioned to "examine the record with care lest an abuser hiding behind an apparently innocent act be overlooked. But they must be equally careful lest a plaintiff be permitted to seize upon what is truly an innocent act in an effort to gain an advantage in litigation between parties." Ibid.

Here, the alleged predicate act of harassment took place on December 17, 2022, when P.H. followed J.H. despite her request for him to stop; when P.H. attempted to take J.H.'s phone from her as she recorded the incident; and when P.H. attempted to enter the bathroom after J.H. and the children had locked themselves in. The court inferred P.H.'s intent from the events of that night. J.H., clearly concerned, asked P.H. to stop following her, but he continued. When R.D. arrived, he grabbed her and forced her outside. When J.H. was so fearful of P.H. that she locked herself and the children in the bathroom to protect themselves from him, he attempted to break in. From these actions, it is reasonable to infer P.H. intended to cause alarm, constituting a purpose to harass

21

under the PDVA.  See J.D., 207 N.J. at 477-78.  We defer to the court's findings, grounded in the ample trial record,  Gnall, 222 N.J. at 428, and we conclude that the trial court committed no error in issuing the FRO against P.H.

B.

P.H. next claims the trial court showed improper bias towards him when it displayed "extraordinary hostility, impatience, and intemperateness" throughout the trial.

"The conduct of a trial . . . is within the discretion of the trial court." Persley v. N.J. Transit Bus Operations, 357 N.J. Super. 1, 9 (App. Div. 2003) (citing Casino Reinvestment Dev. Auth. v. Lustgarten, 332 N.J. Super. 472, 492 (App. Div. 2000)).  This discretion is not disturbed "unless there is a clear abuse of discretion which has deprived a party of a fair trial."  Ibid. (citing Daisey v. Keene Corp., 268 N.J. Super. 325, 334 (App. Div. 1993)).  Trial courts also "retain wide latitude . . . to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  State v. Budis, 125 N.J. 519, 531 (1991) (alteration in original) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).  These limits, however, must not deprive a party of their right to due process by

22

prohibiting one party from presenting relevant witnesses or from cross-examining other witnesses. Peterson v. Peterson, 374 N.J. Super. 116, 125-26 (App. Div. 2005).

In reviewing allegations of bias or prejudicial conduct, a reviewing court must consider the entire transcript. Mercer v. Weyerhaeuser Co., 324 N.J. Super. 290, 298 (App. Div. 1999) (citing State v. Zwillman, 112 N.J. Super. 6, 20 (App. Div. 1970)). "An isolated instance of 'judicial annoyance,' however, does not 'warrant the drastic remedy of vitiating an otherwise valid [judgment].'" Hitchman v. Nagy, 382 N.J. Super. 433, 451 (App. Div. 2006) (alteration in original) (quoting State v. Medina, 349 N.J. Super. 108, 132 (App. Div. 2002)). Likewise, "[b]ias cannot be inferred from adverse rulings against a party." Strahan v. Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008) (citing Matthews v. Deane, 196 N.J. Super. 441, 444-47 (Ch. Div. 1984)). Instead, a reviewing court must ask: "Would a reasonable, fully informed person have doubts about the judge's impartiality?" DeNike v. Cupo, 196 N.J. 502, 517 (2008).

Our review of the voluminous record reveals some moments of judicial frustration, but nothing which would suggest sustained or outcome-determinative bias. The trial court properly rejected P.H.'s counsel's suggestion that it was somehow rushing the trial. In fact, the court conducted a lengthy trial

23

over the course of fifteen days. We also note that P.H.'s counsel repeatedly argued with the trial court after it made rulings throughout the trial. The record shows the trial court was clearly frustrated by having its rulings constantly challenged. Although the court did admonish and rebuke trial counsel during this non-jury trial, P.H. was not deprived of a fair trial. The record shows no indication that the judge was not impartial in rendering his decision. P.H. was allowed to call multiple witnesses, testify himself, and was allowed to cross-examine J.H. We are unpersuaded by P.H.'s claims of bias and find no due process error.

C.

P.H. next argues that attorney's fees should not have been awarded in this instance because such an award is unsupported in the record. He posits that the fees were unreasonable, or, alternatively, were not related to the domestic violence at issue in this matter. We do not agree.

An award of fees in a domestic violence action rests within the discretion of the trial judge. McGowan v. O'Rourke, 391 N.J. Super. 502, 507-08 (App. Div. 2007). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis,'" or "failed to consider controlling legal principles."

24

Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)); see also Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015).

We will disturb a trial court's determination on counsel fees "only on the 'rarest occasion,' and then only because of clear abuse of discretion[,]" Strahan, 402 N.J. Super. at 317 (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)), or a clear error in judgment, Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010). Where a trial judge correctly applies the case law, statutes, and court rules governing attorney's fees, the fee award is entitled to our deference. Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000); see also Pressler & Verniero, Current N.J. Court Rules, cmt. 4.7 to R. 5:3-5 (2024).

After the trial court judge's retirement, a second judge heard the counsel fees argument. That judge considered the hourly rate documentation, the experience of the legal professionals involved, and the amount of time spent on the case. The judge noted that the $262,594.45 figure requested was "bigger than I've ever seen in an FV," but nevertheless found it reasonable, citing the length of the trial and the multiple attorneys involved in representing J.H. The judge rejected P.H.'s argument to reduce J.H.'s fee for not proving simple assault as a predicate act, because the proofs to show simple assault and the proofs to

show harassment were similar. The judge determined that a reduction of the requested fees "defeats the entire purpose of the [PDVA]." Finally, the judge rejected P.H.'s argument that trial court should have decided the fee issue, noting that the court was required to retire under the New Jersey Constitution, and therefore could not have completed the task. We conclude there is no error here.

D.

For completeness' sake, we address two additional issues raised by P.H. in his merits brief.

First, P.H. argues that the DV trial court committed error by not using its equitable powers to grant civil restraints as an alternative to issuance of a final restraining order. We disagree.

Without finding that a defendant has violated the PDVA, the court "lacks a jurisdictional basis to enter a final restraining order or award damages in that matter," and any FRO entered without such a finding must be vacated. P.J.G. v. P.S.S., 297 N.J. Super. 468, 471 (App. Div. 1997).

> In the context of any domestic violence case, however, the court has ample inherent power to order any party to refrain from conduct that frustrates the court's jurisdiction or the [PDVA]'s intendment, or has the capacity to do so. The court also has the authority to order the performance of acts designed to complement its jurisdiction or further the [PDVA]'s design.

26

[Ibid.]

Indeed, the court is expressly directed to "grant any relief necessary to prevent further abuse." Id. at 472 (quoting N.J.S.A. 2C:25-29(b)). Where a court does not have the jurisdiction to enter an FRO, it may still "impose appropriate restraints" on a party, "in the context of and correlative to the relief ordered in the final restraining order" that would otherwise have been granted. Id. at 473.

Here, the trial court found that the dispute rose to the level of domestic violence. It follows that civil restraints would be inappropriate. Only non-domestic violence disputes give a Family Court judge the latitude to resolve a dispute between parties without use of the PDVA.

Finally, P.H. argues that the matter should be remanded to a different trial court, because the judge who heard the attorney's fees portion of this case also presided over the parties' FM matter and has made credibility findings in that case. P.H. contends that remanding to a different judge is necessary, "to preserve the appearance of a fair and unprejudiced hearing." Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 1:12-1 (2025). We comment briefly.

"Absent a showing of bias or prejudice, the participation of a judge in previous proceedings in the case before him is not a ground for disqualification." State v. Marshall, 148 N.J. 89, 276 (1997) (citing State v. Walker, 33 N.J. 580, 591 (1960)) (citing State v. Bolitho, 103 N.J.L. 246 (Sup. Ct. 1927), aff'd., 104 N.J.L. 446 (E. & A. 1927)).

We note that P.H. made no showing that the FM judge, the same judge who heard the attorney's fees portion of this matter, engaged in any conduct or made any statements during the divorce proceeding that could disqualify the court from hearing the remand of P.H.'s domestic violence case. We are mindful that the domestic violence trial judge has retired. We decline P.H.'s invitation to order assignment of this matter to a different Family Part judge.

To the extent that we have not addressed any of P.H.'s remaining arguments, we find they are so lacking in merit as to not warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed and remanded in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2273-22